186 P.2d 951

STANDARD ACC. INS. CO. v. INDUSTRIAL COMMISSION OF ARIZONA et al.

No. 4986.

Supreme Court of Arizona.

Nov. 17, 1947.

Gust, Rosenfeld, Divelbess, Robinette & Linton and James C. Engdahl, all of Phoenix, for petitioner.

H. S. McCluskey, of Phoenix (Robert E. Yount, of Phoenix, of counsel), for respondent.

LaPRADE, Justice.

Everett W. Heath, petitioner, received an award of compensation under Workmen's Compensation Act, section 56-901 et seq., A.C.A.1939, against Standard Accident Insurance Company as insurance carrier for Lawrence Warehouse Company, the employer of Heath at the time he was injured. The award was for accident benefits, compensation for temporary total disability, and "Compensation for permanent partial disability in the sum of $19.74 monthly, until further order of this Commission, * * *." Petitioner asked for a rehearing on the award granting compensation for permanent partial disability, which was denied, and the matter is brought before us in the usual manner.

The claimant Everett W. Heath was accidentally injured on July 8, 1946, while engaged in his duties as a clerical worker for his employer. At the time of injury claimant and several other men were moving a table. A corner of the table hit the claimant in the groin causing the left testicle to atrophy within a few weeks. On December 5, 1946, a board of four physicians confirmed the earlier diagnosis of atrophy, stating that they were of the opinion that no additional treatments were required; that the employee could safely continue his usual occupation; and that "There has been no permanent, general, physical, functional disability resulting from the accident in question."

The claimant filed an application for a rehearing asserting that he was permanently disabled so that his earning capacity was greatly reduced because of the accident. The application was granted and a board of five physicians was appointed to examine him. This board confirmed the report of the first medical board as to the atrophied condition of the testicle and in addition reported that they were of the opinion "that there is total disability of the left testicle due to its complete loss of function and that this can be attributed to the injury sustained in the accident of July 8, 1946." This board made no finding

that the employee had suffered any physical disability that would preclude him from following his usual occupation. After receipt of this report the Commission made its findings and award. Among the findings were the following:

"That the average monthly wage of said applicant for the thirty days immediately prior to said personal injury was the sum of $288.80."

\*  \*  \*  \*  \*  \*

"That the average monthly wage said applicant is able to earn after said personal injury is not less than $192.90.

"That said personal injury caused also a permanent partial disability for work; *that said permanent partial disability caused a loss in said applicant's earning power* not greater than 15.69%; that 55% of the difference between said applicant's average monthly wage before said accident and the least average monthly wage said applicant is able to earn thereafter is the sum of $19.74; that said applicant is entitled to compensation therefor, in the sum of $19.74 monthly to be paid until further order of this Commission." (Emphasis supplied.)

\*  \*  \*  \*  \*  \*

"That said applicant could at all times on and after August 25, 1946 return to work without aggrevating or increasing the general functional physical disability produced by said injury.

"That said applicant is qualified and is employable in work that will produce earnings of at least $192.90 monthly, and the general functional physical disability resulting from said injury will not reduce his earning power in excess of 15.69% loss."

The petitioner has made the following assignments of error and propositions of law in support thereof:

### Assignment of Error No. 1

The Industrial Commission erred in finding that claimant suffered a permanent partial disability for work because of the injury here involved, for the reason that such findings are not supported by the evidence and are contrary thereto.

### Assignment of Error No. 2

The Industrial Commission erred in granting the award based on such findings.

### Proposition of Law No. 1

In order to be compensable, the injury must be one that causes physical disability for work which results in reduction of ability to earn.

### Proposition of Law No. 2

Reduction of earnings brought about by industrial conditions, and not by reason of physical disability resulting from the injury, should not be used in determining whether or not claimant has sustained loss of ability to earn.

It is the contention of petitioner that, from the information and evidence contained in the record, the Industrial Commission of the State of Arizona should

have made findings to the effect that the personal injury here involved caused claimant no disability for work and no impairment of his earning capacity, and that, therefore, claimant is not entitled to compensation for permanent partial disability for work.

The evidence from the record shows that claimant earned $8.80 per day or $1.10 per hour at the time of his injury. After his injury he returned to work on August 26, 1946, for the Lawrence Warehouse Company, his employer at the time of the injury, at a wage of $1 per hour, and continued working until October 4, 1946. From October 7th through November 1st, he worked for the War Assets Administration and received $155.38 during this period of time, although the record does not show the hourly wage or the number of days that were worked. From November 4, 1946, through January 25, 1947, the day the investigation for the record ceased, and presumably thereafter, claimant has worked for the Reynolds Aluminum Company at an hourly wage of $1.15, plus three cents an hour extra when working on the afternoon shift.

The evidence further shows that for the five-month period from August 26, 1946, through January 25, 1947, claimant's actual earnings were $983.38 or a monthly average of $192.90. Claimant's average monthly wage at the time of the accident was $228.-80, which figure was arrived at by the Commission by multiplying his hourly wage of $1.10 per hour by the number of hours he worked per day (eight) and the number of days he worked per month (twenty-six) figured on the basis of a six-day week.

Petitioner asserts that the evidence in the record as set forth above does not support the findings of the Commission that claimant was permanently partially disabled for work. Petitioner maintains that the reduction in average monthly earnings, if such reduction does exist, is due to changing job conditions and in no manner attributable to the injury and the resulting functional disability of the left testicle and cord.

Section 56-957(c) and (d), A.C.A.1939, on which is based the award granted herein, insofar as pertinent, reads as follows: "(c) * * * In cases not enumerated in subsection (b), where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly *wages he is able to earn thereafter,* * * *." (Emphasis supplied.)

In the case of Zagar v. Industrial Commission et al., 40 Ariz. 479, 14 P.2d 472, 476, this court held that the term "percentage of disability" means "percentage of disability to earn his former wages." In the case of Hoffman v. Brophy et al., 61 Ariz. 307, 314, 149 P.2d 160, 163, claimant suffered a back injury and was awarded compensation for permanent partial disability equal to twenty-five per cent of a

permanent total disability, basing this on the rating of twenty-five per cent functional physical disability given him by the Medical Rating Board. The award was set aside and the case remanded, this court saying: "* * * The measure of the award in a case such as this is not the percentage of 'functional disability', nor the amount of wages actually earned since the injury, but rather the loss of earnings caused by the injury. * * *"

This court went on to state: "* * * It should be kept in mind that medical evidence is only as to the physical injury or disability and not as to how that affects earnings. * * *" To the same effect are the holdings in Kilpatrick v. Hotel Adams Co., 42 Ariz. 128, 22 P.2d 836 and Six Companies, Inc., v. Industrial Commission, 42 Ariz. 501, 27 P.2d 678.

A fact situation not too dissimilar to the case at bar is reported in the case of Hyett v. Northwestern Hospital for Women and Children, 147 Minn. 413, 180 N.W. 552, where claimant received an injury to his left pudic nerve which rendered him permanently impotent (case at bar, sterility of left testicle). The court said: "* * * And in given cases, like that at bar an injury, accidental or otherwise, may impair and totally destroy some function of the human body not of a character to incapacitate the employe from his usual employment, or affect his earning capacity, therefore not within the letter of the Compensation Act. * * *"

The burden was on the claimant to show that any loss of his earning capacity was caused in whole or in part or was contributed to by his injury. Aluminum Co. of America v. Industrial Commission, 61 Ariz. 520, 530, 152 P.2d 297. There is no legal presumption that the functional disability of a testicle, caused by injury, creates a permanent partial disability to work and earn wages. We think this observation is justified in view of the holding of this court in Olive v. Industrial Commission, 52 Ariz. 460, 83 P.2d 784, 785, in which case the injury received by the employee necessitated the removal of the entire spleen. The proposition was advanced that the removal of the entire spleen created a presumption of law that the removal thereof established a permanent partial disability. We agree with the holding in that case and think that the following language therefrom is applicable herein: "* * * We think that it is a question of fact, to be determined by the proper triers of the fact upon competent evidence presented to them as to the actual existence of the disability claimed. * * *"

To sustain the award the Commission has advanced the novel argument that where there is some functional disability then the allegation of claimant that his earning power is greatly reduced, together with the fact that he has changed jobs and his average monthly earnings are less, is evidence to support the findings of the Commission. This argument it makes in

face of the fact that the record does not anywhere show that the functional disability caused claimant to change jobs or caused the reduction in his earning capacity. The record shows that claimant, since returning to work after his injury, has earned less per month than he was earning previously, but there has been no showing whatsoever that it is the functional disability which causes or contributes to this decrease in average monthly earnings. There is no showing in any way that a reduction in his capacity to earn has brought about the decrease in average monthly earnings. On the contrary it appears from the record that the decrease in average monthly earnings was caused by conditions inherent in the jobs themselves and can in no way be attributed to the functional disability. It affirmatively appears from the record that claimant was earning five to eight cents more per hour in the job he was holding at the time the report for the record was compiled than in the job he was holding prior to and at the time of the injury. That his average monthly earnings are less is fully explained by the fact that in the present job he normally works a five-day, forty-hour week, and in the prior job he normally worked a six-day, forty-eight-hour week. Nowhere in the record does it appear that claimant's functional disability prevents him from working a forty-eight-hour week or that the functional disability in any way caused him to change jobs. The fact that claimant earns less money per month because of fewer hours worked is no evidence at all that his earning capacity has been decreased, in the absence of other relevant facts and circumstances. No showing has been made that if claimant had received no injury or had no functional disability, he would be earning more than he is presently earning. There is no showing that he would be working more hours per day, more days per week, or receiving more money per hour. In short the evidence contained in the record nowhere shows that claimant's earning capacity has been decreased.

Respondent mentions that the disability affecting "earning capacity" (unjustifiable assumption) may be more psychic than physical. However, there is still no indication in the record that any result of the injury and functional disability, whether physical or psychic, has caused or contributed to a change in jobs or a decrease in earning capacity. If it had been suggested that the reasons for the award were psychic, we would be inclined to agree. We say this advisedly for the reason that the Commission admits that functional disability, standing alone, is insufficient to support an award. This rule has been announced on at least two occasions. Olive v. Industrial Commission, supra, and Hoffman v. Brophy, supra. There was nothing else in the case except the lone fact that claimant's monthly wages were in a lesser amount than he had received at the time of the injury. The evidence thoroughly

explained this difference in wages. The record is devoid of any evidence to show that this difference in wages was in any manner attributable to the functional disability—and he had no physical disability.

The award is set aside.

STANFORD, C. J., and UDALL, J., concur.