237 P.2d 809

EAVES v. INDUSTRIAL COMMIS-SION et al.

No. 5513.

Supreme Court of Arizona.
Nov. 12, 1951.

. Leonard S. Sharman, Phoenix, for petitioner.

H. S. McCluskey, Phoenix, for respondent, Industrial Commission, Robert E. Yount and Robert W. Pickrell, Phoenix, of counsel.

· DE CONCINI, Justice.

The facts involved in this case are not in dispute. Petitioner at the time of his injury was a lineman, aged 24 years, employed by the Trico Electric Cooperative, Inc. He fell from a power pole and severely injured his back. The commission found that at the time of his injury he was earning an average of $360 per month. He was paid total temporary disability and medical benefits. After his condition became stationary and a final award was made he was unable to return to his former type of work, but did obtain employment as a peace officer in the town of Eloy at the rate of $275 per month.

The commission found that as a result of his injury, there was a 10% general functional disability. The commission gave him an unscheduled permanent partial disability rating of 20% and awarded him $39.60 monthly.

Petitioner brings this matter for review by certiorari under section 56–972, A.C.A. 1939, and assigns as error that the commission's award was in error because the uncontradicted evidence showed him to have sustained a 23.6 per cent loss of earning capacity.

The pertinent provisions of our statutes governing this situation are subsections (c) and (d) of section 56–957, A.C.A.1939:

"(c) In cases not enumerated in subsection (b), where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter, but the payment shall not continue after the disability ends, * * *.

"(d) In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. * * *"

It is the petitioner's contention that the meaning of section 56–957(c), supra, is clear and unambiguous, and that the commission under the peculiar facts of this case has no discretion but must base its award on 55% of the difference between what petitioner earned prior to the accident and what he is now able to earn, i. e., $360 minus $275 equals $85 difference per month and 55% of that would entitle him to $46.75 monthly instead of $39.60.

The commission contends that the award made by them does not have to be based solely on the difference in wages but that the percentage of disability as fixed by them can be and does include the other factors, and that these elements were considered by the commission in fixing the amount of the award.

The provisions of section 56–957(c) and (d), supra, have been before this court many times. We quote with approval from a recent case bearing on this point, Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160, 161, where the court, speaking of the above section, said:

"The statute just quoted states explicitly of what the award shall consist. It is 55% of the difference between the claimant's monthly wages before the accident and the monthly wages he is 'able to earn' thereafter.

* * * * * *

"While such a determination may present substantial difficulties due to the fact that it is impossible to determine with mathematical certainty the exact extent of the loss of earning power when it is only partial in its nature, yet the Commission, however, in discharging this duty is not left wholly without guide posts to point the way, for the very next paragraph of the code, subdivision (d) provides:

"'In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the na-ture of the physical injury, and the age of the employee at the time of the injury. * * *'"

We have held that the "percentage of disability" referred to in subsection (d) is based upon his inability to earn his former wages. Zagar v. Industrial Commission, 40 Ariz. 479, 14 P.2d 472; Six Companies, Inc., v. Industrial Commission, 42 Ariz. 501, 27 P.2d 678. The Hoffman case, supra, also set forth the following: "The measure of the award in a case such as this is not the percentage of 'functional disability', nor the amount of wages actually earned since the injury, but rather the loss of earnings caused by the injury."

■ The foregoing shows that the commission is not limited to the task of being a mere calculator of percentages but does have discretion to determine what a claimant is "able to earn" after he has been classified as an "unscheduled disability", which brings him within the provisions of 56–957(c) and (d). Subsection (d) provides certain factors, supra, which the commission must give consideration in fixing his percentage of disability.

■ Assuming that the commission did consider the four factors listed under subsection (d), we find the following:

(1) Petitioner had no previous disability;

(2) Petitioner could not return to his previous occupation;

(3) Petitioner had been paralyzed from his waist down and improved to the extent of a 10 per cent functional loss.

All of these factors could only be considered in favor of the petitioner. The fourth factor is the petitioner's age. He was 24 years old. There was no evidence in the record that because of his age he could earn more money. Taking these factors in the light most favorable to the commission there is nothing in the evidence to support an award which was less than the actual mathematical calculation of the difference between his earning power before and after his injury. If there was any evidence to support such a finding we would sustain it. Without such evidence it is arbitrary.

The commission contends: "The evidence may support the award despite the technical mathematical calculation if effect is given to imponderables, presumably but not specifically found by the Commission. In any event, the evidence must speak, for there is nothing further of record in the premises."

The record of the proceedings of the commission fails to disclose any evidence which that body could have considered in determining that the petitioner was entitled to a flat 20% loss of earning capacity. The "imponderables" must be supported by evidence in the record.

Award set aside.

STANFORD, PHELPS and LA PRADE, JJ., concur.

UDALL, Chief Justice (dissenting).

If I understand the import of this last statement ("The 'imponderables' must be supported by evidence in the record."), it is laying down a rule that awards will not be sustained hereafter unless the commission spells out in detail the factors it considered and the relative weight each was given. The word "imponderable" literally means "incapable of being weighed". Webster's New International Dictionary, Section Edition. We have no right to require the commissioners to open their minds and pour out the mental processes by which they arrive at a decision. Their exercise of judgment and discretion should be accorded the same treatment and consideration as given judicial pronouncements. I submit this holding places an intolerable burden on the commission.

The four factors enumerated in section 56-957(d), supra, are not all inclusive in determining the percentage of disability for the statute states that: " * * * consideration shall be given, *among other things,* to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. * * *" (Emphasis supplied.)

Hence with all the imponderables that must necessarily be considered in arriving at the amount of an award, the most that should be expected of the industrial commission is an "approximation".

It seems to me that the court is establishing a dangerous precedent in the setting aside of this award, as in effect it is directing the commission to allow the petitioner a specific percentage of loss of earning capacity that is a further increase of 3.6%. The figure of 23.6% is admittedly predicated on a mere mathematical calculation of the one factor, i. e., the difference in wages earned "now" and "then".

Up to this time it has been the rule in these industrial appeals that our authority was limited to. affirming or setting aside an award and that we were without jurisdiction to do what is indirectly being done in the instant case, i. e., reverse with directions. Red Rover Copper Co. v. Industrial Comm., 58 Ariz. 203, 118 P.2d 1102, 137 A.L.R. 740; King v. Orr, 59 Ariz. 234, 125 P.2d 699; Kennecott Copper Co. v. Industrial Comm., 62 Ariz. 516, 158 P. 2d 887.

Furthermore this decision flies squarely in the face of the pronouncement in Hoffman v. Brophy, supra, (so greatly relied upon by the majority) which states: "* * * that it is *impossible to determine with mathematical certainty the exact extent of the loss of earning power* when it is only partial in its nature, * * *." (Emphasis supplied.)

The writer is not dissenting because I object to the inconsequential increase of $7.15 per month that will be given the petitioner, but rather for the basic reasons heretofore stated that I would affirm the award.