680 P.2d 1214

Bert A. PUTVAIN (Deceased); Heidi F. Putvain (Alleged Widow); Bert A. Putvain, Jr., a minor; Jason G. Putvain, a minor; Aaron H. Putvain, a minor; Individually and by their Guardian Ad Litem, Heidi F. Putvain; Tammy Lee Putvain, a minor; Individually and by her Guardian Ad Litem, Sharon Putvain Hall, Petitioners,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

National Metals, Respondent Employer,

Transportation Insurance Company, c/o Insurance from CNA, Respondent Carrier.

No. 1 CA–IC 2683.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 30, 1983.

Rehearing Denied Oct. 13, 1983.

Review Granted Nov. 22, 1983.

Alston, Edwards & Novak, P.C. by Cecil A. Edwards, Jr., Phoenix, for petitioner Heidi F. Putvain.

James A. Overholt, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Jennings, Strouss & Salmon by Steven C. Lester and Ronald H. Moore, Phoenix, for respondents Employer and Carrier.

OPINION

JACOBSON, Chief Judge.

The sole issue in this review of an award of the Industrial Commission is whether a

widow who was originally abandoned by her husband may be considered to have abandoned her husband within the meaning of A.R.S. § 23–1064 at the time of his death in an industrial setting.

This action originated when the petitioner, Heidi F. Putvain, on November 7, 1980, filed a claim for widow's benefits and for benefits for her three minor children as the result of the death of Bert A. Putvain who on September 5, 1980 was electrocuted while working for the respondent employer, National Metals. This claim was denied, timely protested and hearings were held.

The administrative law judge issued an award allowing benefits to the 3 minor children of Heidi and Bert, as well as to an additional child of Bert's by a prior marriage, but denied widow benefits to Heidi. Following denial of post award motions, Heidi has sought review of the award denying her benefits in this court.

The evidence established that Heidi and Bert were married in Northfare, Vermont in 1973 and three children were born of this marriage. Heidi and Bert continued to live in Vermont until August, 1979, when, because of Bert's alleged infidelity, an argument resulted in Bert leaving the family residence. Bert instituted a divorce action in Vermont, but apparently did not actively pursue that action. Heidi did, however, counterclaim for divorce in that action, which resulted in a decree dated July 2, 1980, granting Heidi a divorce which under Vermont law would be final on September 30, 1980.

Following the separation in 1979, Bert did not support either Heidi or his minor children. Apparently, no reconciliation efforts were made by either party and, in fact, Heidi wrote Bert a letter while the divorce proceedings were pending, accusing Bert of molesting her sister's child; accusing him of sinful conduct by living with another woman and not supporting his children; and advising Bert that he "deserved to die."

As previously indicated, Bert was killed on September 5, 1980, 25 days before the Vermont decree of divorce would have become final. Both parties agree that under Vermont law because of the death of one of the parties to the divorce action before the decree becomes final, finality of that decree was precluded and that Heidi properly moved to have the order granting divorce vacated on that basis.

Based upon this evidence, the administrative law judge found that Heidi and Bert were legally married at the time of his death, but further found that under A.R.S. § 23–1064(A)(1), Heidi had voluntarily abandoned Bert at the time of his death, and therefore was precluded from obtaining widow's benefits.

A.R.S. § 23–1064 provides in part, that:

A. The following persons are conclusively presumed to be totally dependent for support upon a deceased employee:

1. A wife upon a husband *whom she has not voluntarily abandoned at the time of the injury.*

(Emphasis added).

Heidi's basic argument on appeal is based upon the following legal logic:

1. That in order to determine whether an individual qualifies as a widow for the purposes of the workers' compensation law, the ordinary domestic relations law of the state must be applied. *Gamez v. Industrial Commission,* 114 Ariz. 179, 559 P.2d 1094 (App.1976).

2. Applying this principle, in order to determine whether Heidi "voluntarily abandoned" Bert, it must appear that Bert would have a cause of action for divorce on the grounds of "abandonment" under the old domestic relations law. (*See* former A.R.S. § 23–312 (3 and 4) and *Jackson v. Jackson,* 470 S.W.2d 276 (Tex.App.1971).

3. Since under the facts of this case, it is clear that Bert could not have obtained a divorce against Heidi for desertion under the old code, since he was the party that left the family residence, ergo, Heidi did not legally abandon Bert under A.R.S. § 23–1064(A)(1) and the adminis-

trative law judge's award is without factual support.

■ We reject this argument for two reasons: (1) what conduct constitutes "abandonment" under A.R.S. § 23–1064(A)(1) is not to be determined at the time of separation but rather at the time of the industrial injury, and (2) "abandonment" under A.R.S. § 23–1064(A)(1) is not equivalent to "desertion" under the old domestic relations code.

Dealing with the last issue first, we find that *Gamez v. Industrial Commission, supra,* is not dispositive of this issue. What *Gamez* held was that in order for a marriage to be legally valid for purposes of the workers' compensation law, the marriage must be valid under the domestic relations law of this state. *Gamez* did not deal with what conduct might constitute abandonment, under A.R.S. § 23–1064, assuming the validity of the underlying marriage.

Likewise, we do not find the Texas case of *Jackson v. Jackson, supra,* persuasive. In Texas, the preclusion of a widow from receiving workers' compensation benefits, because of abandonment, exactly paralleled the definition of desertion under the domestic relations law which entitled a person to obtain a divorce. Under these circumstances, the Texas court held that "it takes the same conduct to constitute 'abandonment' within the meaning of [the Workmen's Compensation Law] as it took to constitute an 'abandonment' under the divorce laws . . . ." *supra* at 279.

This paralleling of language between the two acts is not present in Arizona. In fact, at the time of death here, Arizona had repealed its domestic relations law relative to desertion as a ground for divorce and therefore "abandon" as it appears in A.R.S. § 23–1064 stands alone.

■ We, therefore, adhere to the prior pronouncements of this court dealing with the definition of "abandonment" under A.R.S. § 23–1064: that whether a spouse has abandoned the other depends upon the state of mind of the abandoning spouse, that is, a state of mind incompatible with a desire to continue the marriage relationship, *Clark v. Industrial Commission,* 10 Ariz.App. 486, 460 P.2d 22 (1969) and that this factual issue is not necessarily determined on the basis of who first left whom. *Ranger Insurance Co. v. Industrial Commission,* 15 Ariz.App. 45, 485 P.2d 869 (1971).

■ We further hold that the point in time at which the state of mind of Heidi is to be assessed to determine whether she had abandoned her marriage to Bert, is at the time of Bert's injury, not at the time of the original separation. *State Compensation Fund v. Stanke,* 22 Ariz.App. 74, 523 P.2d 801 (1974); A.R.S. § 23–1064(B).

■ Applying these legal principles to the facts here, we hold that the administrative law judge's finding that Heidi had voluntarily abandoned Bert at the time of his death is supported by the evidence. Heidi actively pursued her counterclaim for divorce after Bert had ceased active pursuit of his complaint in that action. Heidi had obtained an order for divorce which, except for Bert's intervening death, would have become final within 25 days. That order established child support and divided the parties' property.

Heidi's argument that the obtaining of the divorce should not be considered "voluntary" given the circumstances of Bert's leaving and the need to obtain support for her children, is belied by her letter to Bert indicating that he "deserved to die." This letter evidenced an animosity toward Bert and a state of mind incompatible with a desire to continue the marriage relationship.

Finding a reasonable basis in the record for the administrative law judge's finding of voluntary abandonment, the award is affirmed.

BROOKS and OGG, JJ., concur.