[Civil No. 4572.  Filed November 23, 1942.]

[131 Pac. (2d) 357.]

MAGMA COPPER COMPANY, a Corporation, Petitioner v. DOROTHY L. NAGLICH, NORMA REE IONE NAGLICH, and THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Mr. Edward W. Rice, for Petitioner.

Messrs. Cox & Cox, and Mr. Lloyd E. Canfil, for Respondents.

LOCKWOOD, C. J.—Magma Copper Company, called the company, filed its petition in *certiorari* to review an award of the Industrial Commission of Arizona, called the commission, in favor of Dorothy L. Naglich and Norma Ree Ione Naglich.

The facts on which the petition was based may be stated as follows: On February 12, 1940, Joe Naglich, called the deceased, was employed as an air drill operator in the company's mine. While he was operating the drilling machine the drill steel broke, causing the machine to strike him and knock him against the wall of the mine, and then to the floor. He was examined by the chief surgeon of the company, and later by several other physicians, who found that he had been bruised somewhat by the fall and also had a tubercular condition of the spine antedating the injury, and was advised that he would not be able to resume work in the mine on account of the latter. On March 2 he filed his application with the commission for compensation for his injuries. On March 30 it found that he suffered an injury from the accident above described, causing temporary disability from February 13 to 29, 1940, entitling him to compensation of $59.22, and further that he was suffering from tuberculosis of the spine which was not caused nor aggravated by the aforesaid accident, and made the following award:

"Award is hereby made payable to the said applicant by the above named defendant insurance carrier as follows:

"1. The sum of $59.22 payable forthwith.

"IT IS ORDERED that the applicant take nothing further from the defendants or either of them by reason of said claim."

Deceased was not satisfied with this award and asked for a rehearing, claiming that his spinal condition was aggravated by the injury above referred to, and

on July 23, the rehearing having been granted, the following decision was rendered:

"Findings and award in the above proceeding having been rendered heretofore, to-wit, on the 30th day of March, 1940, and rehearing of the same having been requested, granted and held, and the matter having been duly submitted for decision upon rehearing:

"NOW, THEREFORE, this Commission, as its Decision upon Rehearing, orders that said Findings and Award be, and the same is hereby, rescinded."

The record does not show any other formal findings and award were made on deceased's petition for compensation, but there are numerous letters in regard to the matter. The first, dated August 26, 1940, is from the claims manager of the commission to the deceased, and reads as follows:

"Thirty days having expired since the issuance of our decision upon rehearing July 23, 1940, and no protest having been filed by any of the parties concerned, this Commission is now ready to resume the payment of compensation for temporary total disability.

"Having ruled that your present disability is the result of injury and having reinstated you on compensation it is our desire that you report immediately to Doctor Swackhamer, placing yourself completely under his care for any treatment which he may deem necessary. We cannot impress upon you too strongly the necessity of cooperating fully with your attending physician and you are advised that any failure to cooperate on your part may be considered as sufficient cause for suspending payment of compensation."

A copy of this letter was sent to the company and payments for temporary total disability were made without objection by the company until October 15, 1941, when the record shows the commission sent the following letter to it:

"After a careful consideration of all of the evidence in the case of Joe Naglich, the members of the Com-

mission are of the opinion that this man sustained an injury by accident arising out of and in the course of his employment on February 12, 1940, while in the employ of the Magma Copper Company.

"Since the date of injury and at the present time Mr. Naglich is totally disabled and in the opinion of the Commission his condition is not stationary at this time.

"The Commissioners have instructed me to advise you that their decision is to the effect that this claimant is entitled to additional compensation for temporary total disability and that he should be referred to a bone specialist for surgical fusion of the spine."

A conference was held between a representative of the company and the commission, and the latter then informed the company, under date November 7, 1941, as follows:

"As stated in our previous letter the Commission has found that Mr. Naglich is at this time totally disabled and that his condition is not stationary. On the basis of these findings the Commission has decided that Mr. Naglich shall be referred to an orthopedic surgeon for surgical fusion of the spine. You are hereby directed to refer Mr. Naglich to a competent bone specialist for examination and surgery at an early date. Until this man's condition becomes stationary he shall be paid compensation for temporary total disability, after which the extent of any permanent disability resulting from injury will be determined and an appropriate award issued."

On November 15, 1941, a spinal operation was performed on deceased with the full approval of himself, the company and the commission, and the company thereafter paid the expenses of such operation and the following treatment. The condition of deceased apparently was progressing favorably when, on January 21, 1942, he suddenly died. An autopsy showed the proximate cause of the death to be a coronary embolism produced by a thrombus formed in the pul-

monary vein. The report of the physician who performed the autopsy stated:

"It is felt that the venous thrombus with the phlebitis, is in all probabilities the result of pulmonary infection associated with impediment to the respiration caused by the cast with inability to change the position of the patient. While the thrombosis with embolism was the actual cause of death in this patient, there would have been a combination of tuberculosis of the spine."

On February 11 Dorothy L. Naglich, the widow of deceased, filed a claim for compensation on account of her husband's death. On March 19 the commission made the following findings and award:

## "FINDINGS

"1. That the above named deceased, while employed in the State of Arizona by the above named defendant employer, sustained an injury by accident arising out of and in the course of his said employment on February 12, 1940, which injury proximately caused his death on January 21, 1942.

"2. That at said time said employee and said employer were subject to said Workmen's Compensation Law and to the jurisdiction of this Commission.

"3. That at said time said employer was insured against liability for compensation under said law by the above named defendant insurance carrier.

"4. That at said time the average monthly wage of said employee was $145.08.

"5. That the deceased suffered an injury which caused temporary disability entitling said employee to compensation in the sum of $2,469.68, of which the balance of $31.35 due at the time of death has been made payable to Dorothy L. Naglich.

"6. That said employee left surviving him and totally dependent upon him for support at the time of said injury, the following persons who were residing in the United States:

| "Dorothy L. Naglich | 30 years | wife |
| "Norma Ree Ione Naglich | 1 year | daughter |

"7. That the defendant insurance carrier is liable for the reasonable expense of the burial of the deceased, not to exceed the sum of $150.00.

"8. That the applicants are entitled to a death benefit, payable to said Dorothy L. Naglich, for the support of herself and child, to be received by her in her own right and disbursed at her discretion for such purpose.

## "AWARD

"IT IS ORDERED that a death benefit be and it is hereby awarded to said applicants payable to said Dorothy L. Naglich by the defendant insurance carrier as follows:

"1. Payment of the reasonable expense of the burial of the deceased not to exceed the sum of $150.00.

"2. The sum of $50.78 monthly, the first payment to be made on February 21, 1942, until the death or remarriage of said Dorothy L. Naglich, and the payment in one sum of $1,218.72 in the event and at the time of her remarriage.

"3. The additional sum of $21.76 monthly, the first payment to be made on February 21, 1942, until said child shall have died, married, or attained the age of 18 years."

The company asked for a rehearing, which was granted. At this rehearing both the widow and the commission were represented by counsel, and considerable evidence, both oral and documentary, was introduced. Thereafter, and on September 3, 1942, the findings and award above set forth were affirmed, whereupon the matter was brought before us for review.

The company has set up five assignments of error which it groups under four propositions of law. We shall consider these propositions in their logical order.

The first is that a proceeding by a workman for compensation for injury sustained by him is separate and distinct from one for death benefits to dependents, and the decision and findings in the first proceeding

are not *res adjudicata* in the latter, and are, therefore, incompetent in evidence.

It is the general rule heretofore approved by this court that an award of the Industrial Commission, which is not appealed from, made on an application by an injured workman, is *res adjudicata* as against all the parties, and the findings set forth in such award cannot be attacked thereafter by them. The company does not deny that this is true as applied to an attempt to modify such award, but claims that such findings are not binding in a proceeding to recover death benefits by dependents of the workman. This claim is made upon the ground that a proceeding for death benefits is entirely separate and distinct from compensation for injury granted to the injured party, and that the ordinary rule as to *res adjudicata,* as with a judgment, is binding only on the parties and those claiming under them.

It is undoubtedly true that the right of an injured party to compensation during his lifetime and the right of dependents to death benefits after his death are distinct so that the injured party may not, during his lifetime, compromise or release the claim which dependents may have after his death. In *Kay* v. *Hillside Mines, Inc.,* 54 Ariz. 36, 91 Pac. (2d) 867, 870, we said:

"Since this is the theory back of the law, we think it is plain that there are two independent and separate rights of recovery, although based on the same accident; the one of the workman during his lifetime, and the other of his dependents after his death. . . . "

But does it necessarily follow that the findings and conclusions of law in an award made where his rights alone were being determined are not *res adjudicata* when the dependents claim a right which, though arising out of the same factual situation, is independent so far as the award is concerned? The decisions

are not in entire harmony on this question. The rule seems to be established in the states of California and Washington that they are *res adjudicata* as against dependents. *Ek* v. *Department of Labor & Industries,* 181 Wash. 91, 41 Pac. (2d) 1097; *Prince* v. *Saginaw Logging Co.,* 197 Wash. 4, 84 Pac. (2d) 397; *Western Indem. Co.* v. *Industrial Acc. Comm.,* 176 Cal. 776, 169 Pac. 663.

In Ohio, New Jersey, Tennessee and Missouri it is apparently to the contrary. *Industrial Comm.* v. *Davis,* 126 Ohio St. 593, 186 N. E. 505, 88 A. L. R. 1175; *Manion* v. *Eder Erecting Co.,* 187 Atl. 40, 14 N. J. Misc. 741; *Hotel Claridge Co.* v. *Blank,* 169 Tenn. 575, 89 S. W. (2d) 758; *Smith* v. *Kiel,* Mo. App., 115 S. W. (2d) 38.

The industrial act is to be liberally construed, and we think the more liberal construction is to permit the dependents an opportunity to establish their claim independently rather than to hold that they are bound by a result reached in proceedings to which they were not and could not be, parties. We hold, therefore, that while findings and awards unappealed from are *res adjudicata* against both the employer and the injured workman who were parties to the award, they are not *res adjudicata* when dependents are endeavoring to establish their right to death benefits. The commission, therefore, should not have permitted the findings and award on a claim for compensation to the deceased during his lifetime to be offered in evidence on a claim for death benefits to his dependents. We think, however, the error in this case was harmless. The record shows but two awards to the deceased himself, one finding that he had suffered a compensable accident, and the other setting aside the first findings and award *in toto.* Since the ultimate result was the same as though no findings or award whatever had been made, we cannot see where the case of the company was

prejudiced in the slightest manner by the admission of these documents.

So far as the various letters passing between the company and the commission are concerned, they were not relevant as showing that any issue in the case had become *res adjudicata,* but we think they were relevant as showing that the company had approved of payment of additional compensation to the deceased and authorized the operation which was performed upon him, and which it is claimed aggravated his pre-existing condition and ultimately caused his death.

It is urged that the commission could not consider the transcript of the testimony of Dr. Randolph, given at the rehearing on deceased's petition for compensation on June 20, 1940. The company was represented at the hearing by counsel who cross examined the witness on his testimony as to the effect of the accident and injury upon the existing tubercular condition. We think under the liberal rule governing evidence before the commission this evidence was admissible on the present issue.

We consider next the question of whether there is evidence sufficient to support the award made to the widow and minor child. To do this it must appear by competent evidence that the accident and injury received by deceased on February 12, 1940, set in motion a chain of circumstances which ultimately caused his death. The evidence is undisputed that as a result of an accident arising out of and in the course of his employment the deceased fell and struck his back, suffering more or less bruises. It is also undisputed that a tubercular condition of the spine had developed at some time before the accident, and that eleven days thereafter it was active. The medical testimony differed sharply as to whether this activity was caused or aggravated by the fall, or whether it was merely the natural progress of the disease.

■ On an examination of all the testimony, we cannot say the commission was not legally permitted to find that the disease had been aggravated as a result of the accident and injury to the back. It evidently did believe that it had been so aggravated for, with the approval of the deceased and the company, and at the cost of the latter, it ordered a major operation performed for the purpose of, if possible, stopping the tubercular development. If there was no casual connection between the injury and the activity such an order would have been without jurisdiction. The question then is, was this operation and the treatment following it a contributing cause to the injured man's death in January, 1942? The medical testimony again was in conflict, but we think there is sufficient to sustain the conclusion of the commission that the coronary embolism which caused the death of deceased was the result of the operation and the treatment which necessarily followed it. Since the evidence was in conflict on the medical questions involved herein, following our oft repeated rule, we must sustain the findings of the commission on these points.

There is, therefore, no question as to the legality of the award in favor of the widow. It is urged, however, that even assuming she is entitled to death benefits, the commission was without jurisdiction to award such benefits for the minor child. This is based on the admitted fact that the latter not only was not born, but was not conceived until after the injury, and it is contended that in Arizona the rights to death benefits are conclusively fixed by the condition as it exists at the time of the injury, and not at the time of the death.

The right to death benefits under the compensation law is fixed by the provisions of sections 56–953 and 56–960, Arizona Code 1939. The portions of those sections material to the determination of this question read as follows:

"56–953. *Death benefits.*—(a) In the case of an injury causing death, the compensation therefor shall be known as a Death Benefit, and shall be payable in the amount, for the period, and to and for the benefit of the persons following: . . .

"4. To the widow or widower, if there is a child or children, the additional amount of fifteen (15) per cent. of such wage for each child until the age of eighteen (18) years, the total not to exceed sixty-six and two-thirds (66 2/3) per cent. of the average wage; . . .

"8. If there be no dependents in the foregoing schedule dependency shall be determined according to the facts as of the time of the injury; . . . "

"59–960. *Persons presumed totally dependent—Date of determination—To whom death benefits payable.*— The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee: . . .

"3. A natural, posthumous, or adopted child, under the age of eighteen (18) years, or over that age if physically or mentally incapacitated from wage earning, upon the parent with whom it was living at the time of the injury, there being no surviving parent. Step-parents may be regarded as parents, if dependent, and a step-child as a natural child if dependent.

"Questions of dependency and the extent thereof shall be determined as of the date of the injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions, and the death benefits shall be directly recoverable by and payable to the dependent entitled thereto."

■ Under our statute is it necessary that one should be "dependent" upon the deceased employee in order to be entitled to death benefits? We have had the question before us in the case of *Ocean Acc. & Guar. Co.* v. *Industrial Comm.* 32 Ariz. 54, 255 Pac. 598, 600. Therein we said:

" . . . Its enactment as a part of the Compensation Law shows that the Legislature intended to provide

that every child and every widow coming within its terms should be entitled to compensation, but from the language used it is clear that it was not its purpose to include among those who take as a matter of law, that is, those who are presumed to be dependent, whether they be so in fact or not, the children or the widow of every employee killed in the course of his employment, though it does bring within this class every child under the age of 18 years who is living with the deceased parent at the time of the injury, if there be no surviving parent, and every wife who has not at that time voluntarily abandoned her husband. These are the only ones presumed to be dependent, but this does not mean that children or widows not within these classes are denied compensation. It signifies merely that they take it, not as a matter of law resulting from their relationship as natural children or widows, but from their condition as dependents in whole or in part upon the deceased parent or husband. . . ."

██ The question then is, was Norma Ree Ione Naglich dependent upon deceased? Section 56–960 *supra,* states explicity as of what date the question of dependency should be determined, and fixes it as the date of the injury, regardless of the time of death, stating that no change of condition subsequent to the injury can affect the dependency. It is obvious that the minor child of deceased was not, and could not have been, a dependent at the time of the injury.

A somewhat similar question has arisen in a few other jurisdictions, but the decisions are based upon statutes differing in their terms and are of little value as a precedent. Some of these statutes fix the status as of the date of the death of the injured party. In such case there can, of course, be no question. We have been unable to find any case, however, involving a child conceived after the injury. The cases nearest analogous are those where the statute fixes the right as of the time of the injury and the injured party is married after such injury. In some of these cases

the rule is that the subsequently married wife is not entitled to recover. *Dahlquist* v. *Nevada Industrial Comm.,* 46 Nev. 107, 206 Pac. 197, 207 Pac. 1104; *Kuetbach* v. *Industrial Comm.,* 166 Wis. 378, 165 N. W. 302, L. R. A. 1918F, 476.

It is true that other states have taken a different view. *Crockett* v. *International R. Co.,* 176 App. Div. 45, 162 N. Y. Supp. 357; *McBride* v. *Industrial Comm.* 97 Colo. 166, 49 Pac. (2d) 386; *Rosell* v. *State Industrial Acc. Comm.,* 164 Or. 173, 95 Pac. (2d) 726; *McKay* v. *Department of Labor,* 180 Wash. 191, 39 Pac. (2d) 997, 998, 98 A. L. R. 990. We think these last cases are not in point. The New York case is based on a holding that under their statute death benefits payable to the wife and children in no respect rest upon the question of their dependency. This is contrary to our holding in *Ocean Acc. & Guar. Co.* v. *Industrial Comm., supra.* The Washington case states:

"Our statute contains no provision to the effect that the status of the party is determined at the date of the accident, . . . "

This, of course, is not true in Arizona. The Colorado case is based upon a provision of their code not found in the Arizona law, which is construed as determining the dependency as of the time of the employee's death, regardless of the date of the accident and injury. The Oregon case, like the New York one, is based upon the theory that under their statute the wife and children are classified as death beneficiaries, even though they are not dependent. This again is contrary to our decision in *Ocean Acc. & Guar. Co.* v. *Industrial Comm., supra.* In both these latter cases there was a dissenting opinion.

In view of the language of our statute and our decisions that the wife and children of a deceased employee do not take by virtue of their relationship, but of their dependency, we hold that under the statute

the question of dependency is irrevocably fixed as of the date of the injury, and not the date of the death, and that since Norma Ree Ione Naglich not only was not born but was not conceived at the time of the injury, she could not have then been a dependent, present or prospective, upon her father for support, and is not entitled to compensation because of his death.

Since, under the law, awards cannot be modified but must either be affirmed or set aside *in toto,* the award is set aside and the matter remanded to the Industrial Commission.

McALISTER and ROSS, JJ., concur.